William L. MICHELSON, Appellant,

v.

EXXON RESEARCH AND ENGINEER-
ING COMPANY, a Corporation, A.W.
Hanggeli, International Columbia Re-
sources Corporation, a Corporation,
and Gustavo Arias.

No. 86–3274.

United States Court of Appeals,
Third Circuit.

Argued Nov. 18, 1986.

Decided Jan. 2, 1987.

Paul J. McArdle (argued), Pittsburgh, Pa.; (John J. Myers (argued), Ronald W. Folino, Eckert, Seamans, Cherin & Mellott, of counsel), for appellant.

Paul E. Purwin, Exxon Research and Engineering Co., Florham Park, N.J., for appellees.

Before SEITZ, GIBBONS, and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

William L. Michelson, plaintiff below, appeals from the district court's grant of summary judgment in favor of Exxon Research and Engineering Company ("Exxon") on Michelson's claims of defamation, interference with contractual relations, retaliatory discharge, and age discrimination. *See Michelson v. Exxon Research and Engineering Co.,* 629 F.Supp. 418 (W.D.Pa. 1986). We have jurisdiction pursuant to 28 U.S.C. § 1291 (1982).

## I. FACTS AND PROCEDURAL HISTORY

In 1976 Exxon hired appellant as a materials inspector. In October of 1982, Exxon assigned appellant to a project in Erie, Pennsylvania, where appellant was to participate in the inspection of railroad locomotives. Also participating in the inspection was Gustavo Arias, an employee of Carbocol. Carbocol and Exxon were engaged in a joint venture for which the locomotives were being produced.

On December 6, 1982, Arias made a telephone call to James P. Kelly, one of appellant's colleagues at Exxon. Arias reported to Kelly that appellant had been performing his duties inadequately. Arias stated that appellant lacked basic knowledge of locomotives, neglected important aspects of his work, and displayed an arrogant attitude. Following this conversation, Kelly composed a memorandum ("the Kelly memorandum") summarizing Arias' remarks and stating that Arias' remarks had been corroborated by an engineering representative who was present during the locomotives' inspection. Kelly sent the memorandum to appellant's supervisor, Arthur W. Hanggeli, and to other supervisors in the Exxon organization. In turn, Hanggeli sent copies of the Kelly memorandum to Hanggeli's own supervisors and to appellant.

In early 1983, Exxon decided to reduce the number of its materials inspectors as part of a general reduction in Exxon's workforce resulting from a decline in business. Cuts were made on the basis of the inspectors' most recent Performance Appraisals. In April of 1983, appellant received a Performance Appraisal of 3.0 on a scale of 1.0 (outstanding performance) to

4.0 (inadequate performance). In June of 1983, appellant was informed that because of his poor Performance Appraisal, he was vulnerable to termination, and he was urged to take advantage of Exxon's voluntary resignation severance program.

In July of 1983, appellant informed Exxon that he planned to file a workmen's compensation claim against Exxon. In September, Exxon terminated appellant's employment. In 1983, Exxon also terminated six of appellant's twenty-two fellow inspectors.

As a result of these events, appellant filed suit against Kelly in Pennsylvania state court and filed the instant action against Exxon and three other defendants in the United States District Court for the Western District of Pennsylvania. The claims against these three other defendants were dismissed for lack of personal jurisdiction and failure to serve process. In the state action appellant proceeded to trial on two theories, defamation and tortious interference with contractual relations. On the tortious interference claim, the trial court directed a verdict in favor of Kelly based on Kelly's defense of privilege in performance of duty. On the defamation count the trial court entered judgment n.o.v. for Kelly. The grant of judgment n.o.v. was affirmed by the Superior Court which held that as a matter of law the Kelly memorandum was not defamatory. The Supreme Court of Pennsylvania denied appellant's subsequent petition for allocatur.

In federal district court appellant sued Exxon for misrepresentation, defamation, tortious interference with contractual relations, retaliatory discharge, and age discrimination. The district court entered summary judgment for Exxon on all claims. On appeal appellant has apparently dropped the misrepresentation claim.

## II. DEFAMATION

■ The district court determined that Exxon could not be held liable for defamation of appellant. The court first ruled that Exxon could not be vicariously liable for Kelly's publication of the memorandum because appellant had improperly split his claim. The court then held that appellant's claim based on Hanggeli's republication was similarly barred by res judicata. While appellant contends the district court erred in its analysis, we need not decide the propriety of the analysis. Because the state court proceedings are now final, appellant is barred by res judicata from asserting his claim based on Kelly's publication. *Brobston v. Darby Borough*, 290 Pa. 331, 138 A. 849 (1927); *Betcher v. McChesney*, 225 Pa. 394, 100 A. 124 (1917); *see also* Restatement (Second) of Judgments § 51 (1982). In addition, because Pennsylvania courts have rejected the notion of mutuality of estoppel, *see In re Estate of Ellis*, 460 Pa. 281, 333 A.2d 728 (1975), appellant is collaterally estopped from pursuing his claim based on Hanggeli's republication.

## III. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

■ Appellant's complaint contends that Exxon is vicariously liable for Kelly's and Hanggeli's tortious interference with appellant's contractual relations. The district court treated the claims as one and held the combined claim barred by res judicata. Although appellant takes issue with the district court's analysis, we need not consider it. Because the state court proceedings are now concluded, appellant's claim based on Kelly's alleged tortious interference is now barred by the doctrine of res judicata. Appellant's claim based on Hanggeli's alleged interference requires little more analysis. It is settled Pennsylvania law that an employer is responsible for the torts of its employees only when the employees are acting within the scope of their employment. *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1276 (3d Cir.1979) (en banc). It is also settled Pennsylvania law that corporations act only through its officers and agents, *Menefee v. Columbia Broadcasting System, Inc.*, 458 Pa. 46, 329 A.2d 216 (1974), and that a party cannot be liable for tortious

interference with a contract to which he is a party, *Glazer v. Chandler*, 414 Pa. 304, 200 A.2d 416 (1964). If Hanggeli was acting within the scope of his employment in allegedly interfering with appellant's contract, he was acting on behalf of Exxon, and appellant's claim is barred by *Glazer*. If Hanggeli was acting outside the scope of his employment in allegedly interfering with appellant's contract, appellant's claim is barred by the principle stated in *Chuy*. Accordingly, appellant has failed to state a claim against Exxon based on Hanggeli's alleged interference.

## IV. RETALIATORY DISCHARGE

■ Appellant next claims that he was discharged in retaliation for his making a workmen's compensation claim, and, therefore, he has a cause of action for common law wrongful discharge. "Pennsylvania law permits a cause of action for wrongful discharge where the employment termination abridges a significant and recognized public policy." *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 898 (3d Cir. 1983). Some states have recognized that a cause of action exists when a discharge is in retaliation for filing a workmen's compensation claim. *See, e.g., Sventko v. Kroger Co.*, 69 Mich.App. 644, 245 N.W.2d 151 (1976). As of yet, however, no Pennsylvania appellate court has recognized a cause of action for wrongful discharge in the context of workmen's compensation. Nonetheless, the district court herein found that if a Pennsylvania court were to consider the issue, it would find that such a cause of action exists. The district court also found, however, that appellant could not present any evidence supporting such a cause of action. Accordingly, the court entered summary judgment for Exxon. We agree with the district court that even if Pennsylvania forbids discharges in retaliation for filing workmen's compensation claims, there is no triable issue of fact in this case.

The evidence of record unmistakably shows that appellant informed Exxon of his intent to file a workmen's compensation claim in July of 1983. Appellant's own deposition testimony shows that in June of 1983, Exxon informed appellant that he was vulnerable to discharge because of his low performance rating and because of Exxon's workforce reduction program; at this time, no Exxon officer could have had knowledge of appellant's future workmen's compensation claim. The evidence further shows that, in accordance with its workforce reduction program, Exxon did in fact discharge nearly 30% of its inspectors in 1983. Those inspectors discharged had performance ratings similar to that of appellant.

Appellant maintains that this formidable evidence is merely a ruse concealing Exxon's retaliatory motives. However, the only evidence that appellant offers to prove that Exxon's evidence is a ruse are some statements of Hanggeli in September of 1983 describing appellant as "an old weed" that needs to be "pulled-out." These statements could merely indicate that Hanggeli believed appellant to be a poor worker and a drain on the organization. Alternatively, these statements could support appellant's claim of age discrimination. However, these statements are not probative on the issue of retaliatory discharge and in no way address the fact that Exxon had stated plans to terminate appellant before Exxon knew of appellant's workmen's compensation claim.

The Supreme Court recently spoke to the criteria for granting summary judgment:

> If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable ju-

rors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict....

*Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, ——, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). As stated earlier, none of appellant's evidence on the retaliatory discharge claim is significantly probative; *see First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); therefore, we must agree with the district court that, in light of the undisputed evidence offered by Exxon, no reasonable juror could find by a preponderance of the evidence that appellant was discharged in retaliation for his filing a workmen's compensation claim.

## V. AGE DISCRIMINATION

Appellant's age discrimination claim reaches us in a rather uncomfortable procedural posture. In his amended complaint, appellant alleges age discrimination but fails to mention the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (1982) ("ADEA"). Instead, appellant invoked the Pennsylvania Human Relations Act, Pa.Stat.Ann. tit. 43, §§ 951, 952 (Purdon 1964). In his brief opposing Exxon's motion for summary judgment, however, appellant indicated that he was proceeding under the ADEA. At pretrial conference, the trial judge warned that appellant's pleadings did not mention the ADEA; however, appellant failed to properly amend his complaint.

Ultimately, the trial judge found that appellant, in fact, had failed to plead a cause of action under the ADEA, 629 F.Supp. at 424. The trial judge went on, however, and stated that appellant could not bring an ADEA claim because he had failed to file a written charge with the Equal Employment Opportunity Commission ("EEOC") as required by 29 U.S.C. § 626(d) (1982) as a prerequisite to filing suit. The judge then entered summary judgment for Exxon on the ADEA claim.

We have a problem with the notion of granting summary judgment on a claim that was never pleaded. We will dissolve this conceptual vexation by assuming without deciding that appellant adequately, albeit inartfully, pleaded a cause of action under the ADEA.

■ We now turn to the question whether the district court correctly granted summary judgment for Exxon on the basis of appellant's failure to file a written charge with the EEOC. Title 29 U.S.C. § 626(d) (1982) requires a prospective ADEA plaintiff to file charges with the EEOC before he can bring suit in the district court. A number of other circuits have held that a charge must be in writing in order to satisfy § 626(d). *Greene v. Whirlpool Corp.,* 708 F.2d 128, 130 (4th Cir.1983); *Woodard v. Western Union Telegraph Co.,* 650 F.2d 592, 594 (5th Cir.1981); *Reich v. Dow Badische Co.,* 575 F.2d 363, 368 (2d. Cir.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978). After reviewing the statute and the applicable case law, we agree with these other circuits and the district court that § 626(d) requires a writing.

■ Appellant never personally sent a written charge to the EEOC. However, he did telephone the EEOC, and the intake officer to whom he spoke did make a written record of the allegations which appellant orally related. The district court implicitly held that this record did not satisfy § 626(d)'s requirement of a writing. With this we cannot agree, and we hold that the writing required by § 626(d) need not be personally executed by the prospective plaintiff. We find support for this position in the EEOC regulations. Title 29 C.F.R. § 1626.6 (1986) states:

A charge shall be in writing and shall name the propsective respondent and shall generally allege the discriminatory act(s). Charges received in person or by telephone shall be reduced to writing.

Section 1626.8 goes on to say:

... a charge is sufficient when the Commission receives from the person making the charge either a written statement or information *reduced to writing by the*

*Commission* that conforms to the requirements of § 1626.6.

29 C.F.R. § 1626.8 (1986) (emphasis added); *see also* 29 C.F.R. § 1626.3 (1986) (defining "charge" as "a statement filed ... by or on behalf of an aggrieved person...."). These regulations undeniable provide that the required writing need not be personally executed by the prospective plaintiff. Further the regulations are fully consistent with the language of the ADEA[1] and with the purposes of the writing requirement—those purposes being to provide certainty with respect to compliance with the applicable limitation period and to facilitate the EEOC's task of notifying prospective defendants of the complaint. *Woodard,* 650 F.2d at 594–95. Indeed, requiring personal execution of the writing by the prospective plaintiff would serve no purpose other than to thwart otherwise valid complaints of age discrimination.

■ Of course, the mere existence of a writing does not satisfy § 626(d). The writing must constitute a "charge" in order for § 626(d)'s requirements to be fulfilled. "In order to constitute a charge that satisfies the requirement of section 626(d), notice to the EEOC must be of a kind that would convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery." *Bihler v. Singer Co.,* 710 F.2d 96, 99 (3d Cir.1983).

The EEOC's records of the conversation with appellant were never presented to the district court, but the parties did submit the affidavits of two EEOC employees, Eugene Nelson and Eugene Reid. The Nelson affidavit states that according to the EEOC records, appellant called the EEOC, was assigned a charge number, and complained that Exxon had treated him adversely and discharged him because of his age. Though the Nelson affidavit contains numerous conclusions of law, it contains no other facts from which we can ascertain the contents of the EEOC record. The Reid affidavit is far more detailed, however. The Reid affidavit corroborates the facts contained in the Nelson affidavit. It then reports that appellant stated that he "was interested in filing" a claim; the EEOC then informed appellant that it needed more facts in order to begin an investigation and that appellant should get back in touch with the EEOC for purposes of providing the facts necessary to initiate a formal charge. The Reid affidavit then indicates that according to the EEOC records, appellant did not again contact the EEOC. We think that these uncontradicted statements show that the writings on file at the EEOC were insufficient to allow the EEOC "to investigate immediately [instead of] await further communication from the plaintiff before investigation." *Bihler,* 710 F.2d at 100. Therefore, these

---

1. The section of the ADEA dealing with the filing of charges provides in part:

> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—
> (1) within 180 days after the alleged unlawful practice occurred....

ADEA § 7(d), 29 U.S.C. § 626(d) (1982). Thus, the statute is silent as to who must execute the charge. Before the enactment of the ADEA amendments of 1978, Pub.L. No. 95–256, 92 Stat. 189 (1978), this section provided.

> No civil action may be commenced by any individual under this section *until the individual has given* the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—
> (1) within one hundred and eighty days after the alleged unlawful practice occurred....

ADEA, Pub.L. No. 90–202, § 7(d), 81 Stat. 602, 604 (1967) (emphasis added). In light of the 1978 amendments, the EEOC has determined, quite reasonably, that the aggrieved party need not personally execute the charge:

> Prior to 1978, section 7(d) of the ADEA required that the individual give the Secretary not less than 60 days notice of intent to file suit. In 1978 section 7(d) was amended to provide that an aggrieved person could not commence a suit until 60 days after a charge covering the matter complained of had been filed with the Secretary. The change from the active to the passive mode lifts the burden from the individual aggrieved to personally file the charge, and allows any charge made in accordance with § 1626.8 which gives sufficient notice to the Commission to conciliate, to satisfy the 7(d) requirement.

48 Fed.Reg. 138–39 (1983).

writings do not constitute a "charge" for purposes of § 626(d). Consequently, we will affirm the judgment of the district court in all respects.