Stephen E. HUGHES, Albert D. Pope, Chad L. Chasser, and Richard P. McGough, Plaintiffs,

v.

TECHNOLOGY LICENSING CONSULTANTS, INC., a corporation, Anita French, individually and as an officer of the corporation, Lowell L. French, individually and as an officer of the corporation, International Product Design, a corporation, Robert Waxman, individually and as an officer and/or owner of the corporation, Darrell Mormando, individually and as an officer of the corporation, and Al Levasseur, individually and as an officer of the corporation, Defendants.

Civ. A. No. 92–1896.

United States District Court, W.D. Pennsylvania.

Nov. 20, 1992.

Stephen E. Hughes—pro se plaintiff.

Albert D. Pope—pro se plaintiff.

Chad L. Chasser—pro se plaintiff.

Richard P. McGough—pro se plaintiff.

Scott Cessar, Pittsburgh, PA, David Lewis, McLean, VA, for Intern. Product Design, Waxman, Mormando & Levasseur.

Bernard Schneider, Pittsburgh, for Technology Licensing Consultants, Inc., Anita & Lowell French.

## MEMORANDUM OPINION

BLOCH, District Judge.

Presently before the Court are two separate motions to dismiss filed by Technology Licensing Consultants, Inc. (TLCI), Anita French, and Lowell L. French (TLCI defendants) and International Product Design

(IPD), Robert Waxman, Darrell Mormando and Al Levasseur (IPD defendants). For the reasons stated below, those motions will be granted in part and denied in part.

## I. Standard of review

In ruling on a motion to dismiss, the applicable standard of review requires the Court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party. *Rocks v. Philadelphia*, 868 F.2d 644, 654 (3d Cir.1989). The question before the Court is not whether the plaintiffs will ultimately prevail; rather, it is whether the plaintiffs can prove any set of facts in support of their claim that will entitle plaintiffs to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

In ruling on motions to dismiss under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, *et seq.* (RICO), this Court is mindful of the Supreme Court's instruction in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), regarding the interpretation of the RICO Act.

> RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach, *see United States v. Turkette*, 452 U.S. 576, 586–87 [101 S.Ct. 2524, 2530, 69 L.Ed.2d 246] (1981), but also of its express admonition that RICO is to "be liberally construed to effectuate its remedial purposes," Pub.L. 91–452, § 904(a), 84 Stat. 922, 947.

*Sedima*, 473 U.S. at 496, 105 S.Ct. at 3285. *See also United States v. Local 560 of International Broth., etc.*, 780 F.2d 267, 295 (3d Cir.1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986).

## II. Facts

*Pro se* plaintiffs, Stephen E. Hughes, Albert D. Pope, Chad L. Chasser and Richard P. McGough, allege that they are former employees of TLCI, which, according to plaintiffs, is in the business of marketing invention ideas. Plaintiffs allege that since 1985, the TLCI defendants have been defrauding consumers by inducing them to pay fees to TLCI with false promises of financial gain through the TLCI defendants' marketing of their inventions. Plaintiffs assert that the Federal Trade Commission (FTC) prosecuted the TLCI defendants for these activities and obtained a consent decree from them. The consent decree required that all TLCI employees agreed to abide by it, and all employees entered into contracts to comply with the decree.

Plaintiffs allege that they resigned from TLCI in order to avoid participating in the illegal scheme. Plaintiffs further allege that other TLCI employees would also like to resign, however, these employees are being extorted to remain at TLCI. Plaintiffs allege that the TLCI defendants are threatening to render them unemployable in the industry by exposing the employees' contracts to abide by the consent decree.

Plaintiffs allege that the TLCI defendants conspired with the IPD defendants to put teeth into the threat by having the IPD defendants discharge the plaintiffs, so that the TLCI defendants could hold plaintiffs' discharge up to other employees as examples of the fate awaiting them. The amended complaint asserts violations of §§ 1962(a), (b) and (d) of RICO. The complaint also alleges supplementary state claims of tortious interference with contractual rights.

## III. 18 U.S.C. § 1962(a)

In order to have standing to recover under RICO, plaintiffs must plead (1) a § 1962 violation, and (2) an injury to business or property by reason of such violation. 18 U.S.C. § 1964(c); *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1164 (3d Cir. 1989). Both groups of defendants have moved to dismiss all of the RICO claims alleging, among other things, that plaintiffs lack standing to bring such claims. Each will be addressed below.

Plaintiffs have asserted that "defendants TLCI, Anita French, Lowell French, used income that they derived from the above-described pattern of racketeering in the operation of the enterprise, the activities of which affect interstate commerce, in violation

of 18 U.S.C. § 1962(a)." (Amended complaint at ¶ 24).[1] The TLCI defendants have moved to dismiss this claim, asserting that "the injury which plaintiffs claim is the loss of their job. The plaintiffs do not claim that they lost their jobs as a result of the TLCI defendants investing money obtained through racketeering activity. Rather, they claim injury by the IPD defendants' act of discharging them, as part of the scheme to extort other employees. These allegations are insufficient to state a claim under § 1962(a)." (Memorandum in support of [TLCI defendants'] motion to dismiss (TLCI memorandum) at 3–4). The TLCI defendants are correct.

Under 18 U.S.C. § 1962(a), it is illegal to use or invest income derived "from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in interstate commerce. 18 U.S.C. § 1962(a); *H.J., Inc. v. Northwestern Bell,* 492 U.S. 229, 233, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989). A person who has been injured by such a violation may bring a civil cause of action under 18 U.S.C. § 1964(c).

The Third Circuit has held that "§ 1962(a) is directed specifically at the use or investment of racketeering income, and requires that a plaintiff's injury be caused by the use or investment of income by the enterprise." *Brittingham v. Mobil Corp.,* 943 F.2d 297, 303 (3d Cir.1991). "[R]equiring the allegation of income use of investment injury is consistent with both the literal and the fair import of the [language of § 1962(a) ]." *Rose v. Bartle,* 871 F.2d 331, 358 (3d Cir. 1989) (citation omitted). *See generally Princeton Economics Group v. AT & T,* 768 F.Supp. 1101, 1111–15 (D.N.J.1991).

Plaintiffs' amended complaint fails to plead the necessary "investment injury." *Glessner v. Kenny,* 952 F.2d 702, 708 (3d Cir.1991). In the instant case, plaintiffs have alleged that the defendants committed wire fraud, mail fraud and extortion, which constituted patterns of racketeering activity. (Amended complaint at ¶ 20). The injuries alleged by the plaintiffs are:

As a direct and proximate result of the foregoing violations of 18 U.S.C. § 1962 by defendants, plaintiffs were fired from their jobs sustaining injury by loss of income. (Amended complaint at ¶ 29).

In their RICO statement, plaintiffs are unable to set forth the causal relationship between the alleged injury and the § 1962(a) violation of the RICO statute. (*See* RICO statement at ¶ 16). Instead, plaintiffs refer the Court to the RICO statement's listing of the allegations of defendants' scheme to defraud consumers. (*See id.* at ¶ 5). Plaintiffs' assertion that losing their job in some way resulted from the investment of proceeds from racketeering activity is without merit. The injury has not been specifically linked to the use or investment of income in any named enterprise, because, in fact, it was not. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1411 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). Thus, § 1962(a) cannot be a basis for liability in this case. Because no "investment injury" has been pled, plaintiffs have no standing to bring a § 1962(a) claim and the § 1962(a) claim must be dismissed.

### IV. 18 U.S.C. § 1962(b)

■ Plaintiffs also assert a § 1962(b) RICO claim against the TLCI defendants, stating that the TLCI defendants "acquired or maintained an interest in or control of the enterprise, the activities of which affected interstate commerce in violation of 18 U.S.C. § 1962(b)." (Amended complaint at ¶ 25). The TLCI defendants have moved to dismiss this claim, contending that plaintiffs "failed to assert the required nexus as to all TLCI defendants ... rather, the facts which they allege show only that the TLCI defendants used their control over TLCI wrongfully." (TLCI memorandum at 4–5). The TLCI defendants are correct.

Under 18 U.S.C. § 1962(b), it is unlawful for any person "through a pattern of racketeering activity ... to acquire or maintain,

1. In their amended complaint, plaintiffs do not allege any substantive RICO violations against the IPD defendants.

directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Under § 1962(b), plaintiffs must allege a specific nexus between control of a named enterprise and the alleged racketeering activity. *Shearin,* 885 F.2d at 1168 n. 2; *Kehr Packages,* 926 F.2d at 1411. As in *Shearin, supra,* plaintiffs in the instant case have failed to allege any nexus between control of the enterprise, the alleged racketeering activity, and the alleged injury. Since the amended complaint does not allege such a nexus, the § 1962(b) claim must also be dismissed. *Kehr Packages,* 926 F.2d at 1411.

## V. 18 U.S.C. § 1962(d)

Plaintiffs' final RICO allegations are brought under § 1962(d). Plaintiffs allege that the TLCI defendants "conspired with each other to violate 18 U.S.C. § 1962(a) and (b) in violation of 18 U.S.C. § 1962(d)." (Amended complaint at ¶ 26). Plaintiffs allege that the IPD defendants "conspired with each other to violate 18 U.S.C. § 1962(a) and (b) in violation of 18 U.S.C. § 1962(d)." (Amended complaint at ¶ 27). Finally, plaintiffs allege that "all defendants conspired with each other to violate 18 U.S.C. § 1962(a) and (b) in violation of 18 U.S.C. § 1962(d)." (Amended complaint at ¶ 28).

### A. Intra corporate conspiracy

■ The IPD defendants allege that "a corporation cannot conspire with its officers, directors and its sole and controlling stockholder." (Memorandum of [IPD defendants] in support of their motion to dismiss (IPD memorandum) at 11). As such, the IPD defendants contend, plaintiffs have failed to state a claim at paragraph 27 of the amended complaint.

"The majority rule is that conspiracy cannot lie against the corporate entity for the concerted action of its employees who violate RICO on its behalf." *Northeast Jet Center v. Lehigh–Northhampton,* 767 F.Supp. 672, 684 (E.D.Pa.1991) (citing cases). In the context of civil litigation, the rationale is that "[a] corporation cannot conspire with itself because a corporation can act only through its officers and employees. While conducting company business, they cannot conspire with the corporation of which they form an indispensable part. A corporate conspiracy also requires more than the collective judgment of two individuals within the same entity, for their conduct, if challenged, becomes that of the single, corporate entity." *Jagielski v. Package Machine Co.,* 489 F.Supp. 232, 233 (E.D.Pa.1980) (footnotes omitted). By contrast, a corporation and its agent are liable for criminal conspiracies. *See, e.g., McLendon v. Continental Group, Inc.,* 602 F.Supp. 1492, 1511 (D.N.J.1985).

■ An exception is recognized where the plaintiffs allege in good faith that the employees acted solely in their own interest and not for the employer. *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 769, 769 n. 15, 104 S.Ct. 2731, 2740, 2741, n. 15, 81 L.Ed.2d 628 (1984); *Jagielski,* 489 F.Supp. at 233. Finally, a minority of courts have found that RICO's policies transcend the intra corporate bar. *Callan v. State Chemical Manufacturing Co.,* 584 F.Supp. 619, 623 (E.D.Pa. 1984); *Saine v. A.I.A., Inc.,* 582 F.Supp. 1299, 1307 n. 9 (D.Colo.1984); *Mauriber v. Shearson/American Express, Inc.,* 567 F.Supp. 1231, 1241 (S.D.N.Y.1983).

Turning to the instant case, as to the IPD defendants, this Court prefers to follow the majority of courts who have declined to hold a corporation and its agents and employees liable for civil conspiracy. *Northeast Jet Center,* 767 F.Supp. at 685. Therefore, the claim set forth in paragraph 27 of the amended complaint, that claim alleging intra corporate conspiracy by the IPD defendants, will be dismissed.

■ The intra corporate conspiracy alleged against the TLCI defendants represents a set of allegations of a different character. (Amended complaint at ¶ 26). This alleged conspiracy consists of defendants TLCI, Anita French and Lowell L. French committing acts of mail and wire fraud against consumers, and, in furtherance of that scheme, extorting their employees so as to keep them employed by TLCI and keep the scheme undercover. Plaintiffs allege that these defendants conspired with each

other to accomplish the latter goal by informing their employees that the consent decree the employees agreed to abide by would apply to any future employment, contrary to the plain language of the consent decree, and, upon receiving copies of termination notices from the subsequent employer, plaintiffs allege that Anita French convened a meeting of all consultants at TLCI and stated, "you see, you cannot leave, you must work here, or nowhere." (Amended complaint at ¶ 18(b)).

■ These allegations, if true, evidence the type of conspiratorial activity where "the corporate veil was acting to shield the corporation infiltrated at its highest levels by racketeering activity." *Rush v. Oppenheimer and Co., Inc.*, 628 F.Supp. 1188, 1198 n. 5 (S.D.N.Y.1985). Judge Duffy, of the Southern District of New York, stated, and this Court agrees in this instance, that:

> [W]here the action by incorporated collection of individuals creates the "group danger" at which conspiracy liability is aimed, the view of the corporation as a single legal actor becomes a fiction without a purpose. I do not believe that RICO should be construed as being unconcerned with intra corporate conspiracies.

*Mauriber*, 567 F.Supp. at 1240 (citations omitted).

Therefore, the intra corporate conspiracy claim at paragraph 26 will not be dismissed at this early stage in the litigation.[2]

## B. Lack of substantive claims

■ Both groups of defendants allege that the two remaining RICO conspiracy claims should be dismissed pursuant to this Court's prior holding in *Hvostal v. American Idea Management Corp.*, slip op., No. 91-1724, 1992 WL 133908 (W.D.Pa. March 23, 1992). The holding in *Hvostal*, contrary to defendants' assertions, is inapplicable to the instant case. Instead, this Court is bound by the Third Circuit's holding in *Shearin, supra*.

In *Hvostal*, plaintiff was a consumer who alleged that he had been defrauded by defendants. Plaintiff based his RICO claims entirely on the fraud perpetuated against him in his stature as a *consumer*. Plaintiff, in *Hvostal*, stated:

> Plaintiff is a consumer and has suffered substantial damages and injury as a result of defendants' violations of the various acts, including, but not limited to payment of monies for services of the defendants, which plaintiff would not have purchased but for the representations; plaintiff has expended great amounts of his time and effort and other expenses incidental to his course of conduct with defendants; plaintiff has suffered other losses.

*Hvostal*, slip op. at 4–5.

The purely consumer injuries alleged in *Hvostal* are different than the injuries alleged in the instant case. The instant injuries did occur "by reason of" the defendants' alleged violation of § 1962(d). *See Shearin*, 885 F.2d at 1168–69; 18 U.S.C. § 1964(c). As stated by the Court in *Shearin*:

> [A] conspiracy to commit the other RICO violations may occur absent the actual commission of the other violations where racketeering activities underpin them. All that need be shown is that the conspirators agreed to engage in a pattern of racketeering activity. Acts that further a § 1962(d) conspiracy thus may cause harm even when they do not themselves qualify as racketeering activity. Taking into account all the provisions of § 1962, either racketeering activity or classic overt conspiracy acts may qualify as "predicate acts" to a RICO violation that causes injury.

*Shearin*, 885 F.2d at 1169. "Section 1962(d)'s target, like that of all provisions prohibiting conspiracies, is the agreement to violate RICO's substantive provisions, not the actual violations themselves." *Schiffels v. Kemper Financial Services, Inc.*, 978 F.2d 344, 348 (7th Cir.1992) (adopting the Third Circuit's holding in *Shearin* ).

---

2. The IPD defendants assert that the paragraph 28 conspiracy claim between the two groups of defendants should be dismissed on the same grounds. (IPD memorandum at 12, n. 6). This

Court is treating the paragraph 28 conspiracy claim as one between the TLCI defendants and the IPD defendants. As such, no intra corporate conspiracy issues arise.

■ The difference between the instant plaintiffs and the plaintiff in *Hvostal* is apparent. In *Hvostal,* the plaintiff was unable to plead standing under § 1964(c) because his injuries did not result from the conspiracy to violate RICO. Plaintiff's injuries in *Hvostal* resulted exclusively from consumer fraud. The injuries alleged in the instant case are poles apart from the *Hvostal* injuries. In the instant case, the employees are alleging that they were fired to prevent the employer from causing the conspiracy to unravel by disclosing the scheme. "[T]he act causing the injury has been committed to further the conspiracy and is directly related to the conspiracy's goals. This brings the injured employee[s] well within the zone of interest RICO is meant to protect." *Schiffels,* 978 F.2d at 351. In the instant case, as in *Shearin* and *Schiffels,* plaintiffs' injuries resulted directly from the alleged conspiracy to commit and perpetuate the RICO violations. The fact that the act which caused plaintiffs' alleged injuries is not a predicate act of racketeering is irrelevant since "RICO conspiracy does not require the actual commission of a predicate act...." *Schiffels,* 978 F.2d at 348–49.

The instant plaintiffs allege, as to the TLCI defendants, that "The common plan was to continue the fraudulent scheme. Since the employees were becoming aware of the criminal activity and leaving employment [sic]. A scheme was developed to keep their employees by extorting them to commit criminal acts." (RICO statement at ¶ 5(g)). Plaintiffs state, further:

> [The TLCI defendants] told the employees that the consent decree they agreed to abide by, would follow them to other employment (knowing full well this to be false), and upon discovering that the employee was bound to FTC guidelines the new employer would dismiss them. To further protect the scheme defendants TLCI ... contacted [the IPD defendants] on June 24, 1992, and conspired with them to dismiss the plaintiffs.

(Amended complaint at ¶ 18(a)). Because the instant plaintiffs have alleged that they were fired in furtherance of a conspiracy in violation of 18 U.S.C. § 1962(d), they have standing to assert such a claim under 18 U.S.C. §§ 1962(d) and 1964(c). *Shearin,* 885 F.2d at 1170.

### C. Pleading requirements

■ The TLCI defendants further contend that plaintiffs have not pled a RICO conspiracy with enough specificity to inform the multiple defendants of the facts forming the basis of the charge. (TLCI memorandum at 5). The Third Circuit has held that:

> In order to state a claim under RICO subsection 1962(d), a plaintiff must allege (1) agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate §§ 1962(a), (b), or (c). Allegations of conspiracy are not measured under the Fed.R.Civ.P. 9(b) standard, which requires greater particularity of allegations of fraud, but are measured under the more liberal Fed.R.Civ.P. 8(a) pleading standard. A conspiracy claim must also contain supported factual allegations. The allegations must be sufficient to describe the general composition of the conspiracy, some or all of its broad objectives, and the defendants' general role in that conspiracy.
>
> Although mere inferences from the complaint are inadequate to establish the necessary factual basis, a court may look to any factual allegations of particular acts within the complaint as a whole incorporated by the conspiracy claims to provide this basis.

*Rose,* 871 F.2d at 366 (citations omitted).

After a careful review of the amended complaint and the RICO statement, this Court finds that the TLCI defendants have been put on sufficient notice of the composition of the conspiracy, some or all of its broad objectives, and the defendants' general role in that conspiracy.

The pleadings have sufficiently informed the TLCI defendants that the conspiracy is alleged to have been composed of defendant TLCI, Anita French and Lowell French. (Amended complaint at ¶ 26). The broad objectives of this conspiracy, as alleged by plaintiffs, were to "maintain [defendants'] existing sale consultants and bring back some

that left," thereby enabling defendants to "continue their scheme of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343." (Amended complaint at ¶ 14). This conspiracy is alleged to include the "scheme to extort present employees so they would not leave employment and continue to conduct criminal activity on behalf of TLCI, Anita French and Lowell L. French...." (Amended complaint at ¶ 18).

Plaintiffs have sufficiently noticed the TLCI defendants as to their specific roles in this conspiracy. (*See* amended complaint at ¶¶ 18(a)–(c)).

As to the conspiracy alleged at paragraph 28 of the amended complaint, the TLCI and IPD defendants have been sufficiently noticed as to the parameters of that conspiracy. Plaintiffs allege, "As part of the overall scheme to stop the consultant exitus and bring back consultants, [the TLCI defendants] conspired with [the IPD defendants] to dismiss plaintiffs." (Amended complaint at ¶ 14; *see also* amended complaint at ¶ 18(b)). The goals have also been sufficiently pleaded.

On or about June 24, 1992, defendant Anita French approached [the IPD defendants] explaining that she was having trouble keeping her employees. She had devised a scheme whereby she was telling her employees that the FTC consent decree would follow them to other employment and they would be fired when the new employer discovered it. She needed to prove this. Since Anita French and Robert Waxman were friends, employing the same scheme to defraud inventors and that TLCI was taking the "blunt of the blow" [sic] from FTC would fire the plaintiffs and fax the dismissal notices to her because the majority of her employee consultants were leaving on June 26, 1992. She would show them the faxed dismissal notices and the employees would not leave.

(Amended complaint at ¶ 19). This is sufficient to put the IPD defendants on notice at this early, pre-discovery stage of the litigation of the claims being made against them. In addition, this also satisfies the requirement that "to be convicted of a RICO conspiracy, a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally these acts." *United States v. Traitz*, 871 F.2d 368, 396 (3d Cir.), *cert. denied*, 493 U.S. 821, 110 S.Ct. 78, 107 L.Ed.2d 44 (1989). Plaintiffs have adequately pled the requisite *mens rea* comprising knowing furtherance of the enterprise's affairs as to the IPD defendants. *Rose*, 871 F.2d at 367.

### D. Continuity

■ The TLCI defendants seek dismissal of the RICO conspiracy claim against them on the grounds that plaintiffs have failed to plead conduct which establishes "a pattern of racketeering activity" because there is no continuity to the pleaded acts. (TLCI memorandum at 10). The TLCI defendants base this assertion on the fact that "plaintiffs allege that the scheme to extort was concocted and executed between July 24, 1992 and June 26, 1992 [sic]. Thus, all predicate acts occurred within three days." *Id.*

The TLCI defendants have misunderstood the continuity requirement. In *H.J., Inc., supra*, the Supreme Court held that a pattern of racketeering activity requires that predicate acts be "related and that they pose a threat of continued criminal activity." *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900. Predicate acts are related when they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. at 2901.

The plaintiffs in the instant case have alleged that "the defendants are continuing to cause great societal harm," (amended complaint at 7, ¶ (c)), in their scheme of mail fraud and wire fraud, *id.* at ¶ 14. Further, plaintiffs allege that "defendants have been engaged in the invention marketing business since 1985." (Amended complaint at ¶ 14). The scheme to defraud consumers is alleged to have continued at least through September 9, 1992 (amended complaint at ¶ 17), and is continuing today.

As a related act devised to perpetuate the scheme, plaintiffs allege that they were injured by the TLCI defendants in that the defendants committed acts of extortion.

These allegations, if true, represent the type of long-term association that exists for criminal purposes and which constitute a "regular way of doing business." *Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 610 (3d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2300, 119 L.Ed.2d 224 (1992). Indeed, if the plaintiffs' allegations are true, the question remains whether "fraud was the defendants' regular way of doing business." *Swistock v. Jones*, 884 F.2d 755, 760 (3d Cir.1989). Thus, this Court finds that plaintiffs have pled the requisite continuity. *Hindes v. Castle*, 937 F.2d 868, 875 (3d Cir. 1991). Whether the plaintiff can and do prove the requisite continuity is a determination to be made after plaintiffs have had the opportunity for discovery.

## VI. Improper service

The TLCI defendants assert that the amended complaint should be dismissed because of improper service and lack of personal jurisdiction. These defendants assert that "plaintiffs failed to enclose the acknowledgement forms and stamped self-addressed envelope with the original summons and original complaint in violation of FRCP 4(c)(2)(C)(ii) [and] plaintiffs failed to correct the defect; instead serving upon TLCI defendants in the amended complaint also without complying with FRCP 4(c)(2)(C)(ii)." (TLCI memorandum at 11).

The TLCI defendants have misstated the rules of service. Under Fed.R.Civ.P. 4(c)(2)(C)(i), plaintiffs may satisfy the service requirement by following the "law of the state in which the district court is held...." In the state of Pennsylvania, service is proper if the complaint is "mailed to the defendant by any form of mail authorizing a receipt signed by the defendant or his authorized agent." Pa.R.Civ.P. 403. In the instant case, plaintiffs mailed the original complaint by certified mail, thereby satisfying both Pa.R.Civ.P. 403 and Fed.R.Civ.P. 4(c)(2)(C)(i).

Defendant TLCI filed a motion for extension of time to make motions to dismiss the complaint 17 days after the complaint was filed, thereby entering the appearance of the law firm of Brucker Witherel Zappala and Schneider for the TLCI defendants. All subsequent pleadings, including the amended complaint, are properly served if they are mailed to the attorney representing that party. Fed.R.Civ.P. 5(b). The amended complaint was mailed to the TLCI defendants' attorney and, therefore, all service was proper in this case. This Court has personal jurisdiction over the TLCI defendants.

## VII. Supplementary state claims

The IPD defendants have correctly stated that "a corporation cannot interfere with its own contract." (IPD memorandum at 13). *See Michelson v. Exxon Research Engineering Co.*, 808 F.2d 1005, 1007–08 (3d Cir.1987). The question before the Court is whether defendants Robert Waxman, Darrell Mormando and Al Levasseur were acting within the scope of their employment in allegedly interfering with plaintiffs' contract, and terminating plaintiffs. *Id.* at 1008. If they were, then tortious interference with contract claim is barred. If they were not, the claim may proceed.

Such a determination will not be made at this stage in the litigation. It is enough that plaintiffs have pleaded that defendants Robert Waxman, Darrell Mormando and Al Levasseur were "operating outside their scope of authority" when they dismissed plaintiffs from their jobs. (Amended complaint at ¶ 32). Therefore, the IPD defendants' motion to dismiss the supplementary state claim of tortious interference with contract will be denied.

## VIII. Result

As a result of today's holding, the following claims remain. First, plaintiffs have a claim that the TLCI defendants conspired with the IPD defendants to violate 18 U.S.C. §§ 1962(a) and (b) in violation of 18 U.S.C. § 1962(d). Second, plaintiffs have a claim that the TLCI defendants conspired with each other to violate 18 U.S.C. §§ 1962(a) and (b) in violation of 18 U.S.C. § 1962(d). Third, plaintiffs have a supplemental state claim against the TLCI defendants of tortious interference with their contractual relations with IPD. Finally, plaintiffs have a supplemental state claim against Robert

Waxman, Darrell Mormando, and Al Levasseur alleging tortious interference with plaintiffs' contractual relations with IPD.

An appropriate Order will be issued.

## ORDER

AND NOW, this 20th day of November, 1992, upon consideration of the Motion of Defendants, International Product Design, Robert Waxman, Darrell Mormando, and Al Levasseur, to Dismiss the Complaint for Failure to State a Claim Upon Which Relief May Be Granted (document No. 8) filed in the above captioned matter on October 8, 1992, and upon consideration of the Motion of Defendants, Technology Licensing Consultants, Inc., Anita French and Lowell L. French, to Dismiss the Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(1), (2), (5), and (6) (document No. 11) filed in the above captioned matter on October 15, 1992, and upon further consideration of Plaintiffs' Response thereto,

IT IS HEREBY ORDERED that said Motions are GRANTED in part and DENIED in part, to wit:

1. Said Motions are GRANTED to the extent that:

(a) plaintiffs' § 1962(a) claim is DISMISSED;

(b) plaintiffs' § 1962(b) claim is DISMISSED; and

(c) plaintiffs' claim alleging intra corporate conspiracy by the IPD defendants (paragraph 27 of the amended complaint) is DISMISSED.

2. Said Motions are DENIED, in all other respects.